**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1197**

---

JON LODWICK BRUNENKANT,

Plaintiff - Appellant,

v.

SUBURBAN HOSPITAL, INC.; SUBURBAN HOSPITAL HEALTHCARE SYSTEM, INC.,

Defendants - Appellees.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Lydia Kay Griggsby, District Judge.  (8:23-cv-01181-LKG)

---

Argued:  May 7, 2026                    Decided:  May 21, 2026

---

Before KING, AGEE, and HEYTENS, Circuit Judges.

---

Vacated and remanded by published opinion.  Judge King wrote the opinion, in which Judge Agee and Judge Heytens joined.

---

**ARGUED:** Jon L. Brunenkant, BRUNENKANT & ASSOCIATES PLLC, Washington, D.C., for Appellant.  Michael E. von Diezelski, VON DIEZELSKI & TURGEON, LLC, Annapolis, Maryland, for Appellees.

---

KING, Circuit Judge:

In this appeal from the District of Maryland, pro se plaintiff Jon Lodwick Brunenkant — a lawyer from Washington, D.C., and an active member of the Bar of our Court — appeals the district court's November 2023 order dismissing his complaint, which alleged two Maryland state law claims against defendants Suburban Hospital, Inc., and Suburban Hospital Healthcare System, Inc. (collectively "Suburban Hospital," "Suburban," or the "Hospital"), for fraudulent misrepresentation and conspiracy to commit fraud. *See Brunenkant v. Suburban Hosp., Inc.*, No. 8:23-cv-01181 (D. Md. May 4, 2023), ECF No. 1 (the "fraud and conspiracy complaint"). More specifically, the court granted Suburban's motion to dismiss the fraud and conspiracy complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that the claims Brunenkant asserted therein against Suburban Hospital were time barred. *See Brunenkant v. Suburban Hosp., Inc.*, No. 8:23-cv-01181 (D. Md. Nov. 13, 2023), ECF No. 22 (the "Dismissal Order").

On appeal, Brunenkant primarily maintains that the district court applied an incorrect statute of limitations in dismissing the claims alleged against Suburban Hospital in the fraud and conspiracy complaint. That is, Brunenkant says the court incorrectly applied Maryland's five-year statute of limitations for medical malpractice claims, as supplied by the Old Line State's Health Care Malpractice Claims Act (the "Act"), *see* Md. Code Ann., Cts. & Jud. Proc. § 5-109, when the court should have applied the State's general three-year statute of limitations for civil claims, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101. As explained below, we agree with Brunenkant. We are thus constrained to vacate the Dismissal Order of November 2023 and remand for further proceedings.

2

I.

A.

The facts underlying this appeal are rather straightforward.[1]  On October 10, 2015, plaintiff Brunenkant presented at the Emergency Department of Suburban Hospital in Bethesda, with symptoms of abdominal pain, persistent nausea, and vomiting.  After ordering a CT scan of Brunenkant's abdomen — along with an electrocardiogram and an ultrasound — an attending physician in Suburban's Emergency Department suspected that Brunenkant was afflicted with "cholecystitis" or, more simply, gallbladder disease.

On the day that Brunenkant presented at Suburban Hospital, a 72-year-old general surgeon named Dr. Said Daee was scheduled as the "on-call" trauma and emergency services surgeon.  Pursuant to the allegations of the fraud and conspiracy complaint, Suburban and Dr. Daee each represented to Brunenkant that Dr. Daee was an employee, agent, or apparent agent of the Hospital, and that Dr. Daee was acting on behalf of Suburban as its employee, agent, or apparent agent.  To that end, Dr. Daee confirmed the Emergency Department attending physician's diagnosis of cholecystitis, and Dr. Daee recommended prompt emergency surgery to remove Brunenkant's diseased gallbladder.

The next day, October 11, 2015, Dr. Daee removed Brunenkant's gallbladder at Suburban Hospital's Bethesda facility.  Due to complications from the gallbladder removal

---

[1] Our recitation of the facts is derived from the allegations of Brunenkant's fraud and conspiracy complaint.  To that end, as our Court has recognized, we "assum[e] as true the complaint's factual allegations and constru[e] all reasonable inferences in favor of" the plaintiff, Brunenkant.  *See Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (citation modified); *Moretti v. Thorsdottir*, 157 F.4th 352, 359 (4th Cir. 2025).

3

surgery, Brunenkant underwent another surgery about a month later at Georgetown Hospital in November 2015. That second procedure revealed medical malpractice arising out of the gallbladder removal surgery performed a month earlier by Dr. Daee at Suburban.

B.

In January 2020, Brunenkant filed a pro se medical malpractice lawsuit against Suburban Hospital and Dr. Daee in the District of Marlyand. *See Brunenkant v. Suburban Hosp., Inc.*, No. 8:20-cv-00150 (D. Md. Jan. 17, 2020), ECF No. 1.[2] During that litigation, Brunenkant alleges that he discovered — in May 2022 — that Suburban's contract with Dr. Daee, who it turns out was not an employee of the Hospital but rather an independent contractor, disclaimed any supervision of Dr. Daee's activities as a surgeon at the Hospital.

In July and August of 2022, Brunenkant twice sought leave from the district court to amend his complaint in the medical malpractice lawsuit to pursue additional claims against Suburban Hospital, but the court denied such relief in March 2023. Brunenkant thereupon commenced this civil action against Suburban in May 2023, invoking the district court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. By his two-count fraud and conspiracy complaint, Brunenkant alleges that Suburban fraudulently misrepresented itself as Dr. Daee's employer at the time of the gallbladder removal surgery in October 2015, and that the Hospital conspired to conceal its "on-call" services contract with Dr. Daee.

---

[2] Prior to filing his medical malpractice lawsuit, Brunenkant filed a claim in the Maryland Health Care Alternative Dispute Resolution Office, alleging that Dr. Daee negligently performed Brunenkant's gallbladder removal surgery in October 2015, which caused severe injuries. In those proceedings — which are not at issue here — Brunenkant maintained that Dr. Daee was the employee or actual/apparent agent of Suburban Hospital.

In July 2023, Suburban Hospital moved to dismiss Brunenkant's fraud and conspiracy complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Suburban maintained that Brunenkant's claims are time barred under Maryland's medical malpractice five-year statute of limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-109 (establishing five-year statute of limitations for "[a]n action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider"); *but see id.* § 5-101 (specifying that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Maryland Code provides a different period of time within which an action shall be commenced" (citation modified)).

C.

By its eight-page Dismissal Order of November 2023, the district court granted Suburban Hospital's Rule 12(b)(6) motion to dismiss Brunenkant's fraud and conspiracy complaint. Although the Dismissal Order initially recognized Maryland's general three-year statute of limitations for civil claims, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101, it summarily resolved to apply the five-year statute of limitations applicable to medical malpractice claims, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-109. According to the Dismissal Order, "[t]he complaint in this case makes clear that [Brunenkant's] fraudulent misrepresentation and conspiracy to commit fraud claims are untimely under [s]ection 5-109." *See* Dismissal Order 6. Because Brunenkant "was aware of [Suburban's] alleged medical negligence no later than on November 20, 2015," the Dismissal Order ruled that Brunenkant therefore "had five years from that date, up to and until November 20, 2020 to file his claims." *Id.* at 7. In that light, the Dismissal Order deemed the claims asserted

5

against Suburban in the fraud and conspiracy complaint to be untimely under section 5-109, since Brunenkant "commenced this matter on May 23, 2023, well-beyond this five[-]year limitations period" that ran from the date of surgery on October 11, 2015. *Id.*

\* \* \*

Brunenkant promptly sought Rule 59(e) reconsideration of the Dismissal Order that underlies this appeal, but the district court denied such relief in February 2024. Brunenkant timely noticed this appeal from the Dismissal Order in March 2024, and we possess final decision jurisdiction pursuant to 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States").[3]

II.

Our Court "review[s] de novo [a] dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *See Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (citation modified); *Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Again, "in conducting this review, we accept the complaint's factual allegations as true and view them in the light most favorable to the plaintiff." *See Moretti v. Thorsdottir*, 157 F.4th 352, 359 (4th Cir. 2025). Of especial relevance here, "[a] court [is permitted to]

---

[3] We observe that Brunenkant's Notice of Appeal also designated for our review the district court's February 2024 order denying his Rule 59(e) reconsideration motion. Brunenkant's opening brief, however, fails to identify any error with respect to that ruling, such that he has forfeited appellate review thereof. *See Short v. Hartman*, 87 F.4th 593, 615 (4th Cir. 2023). As such, we do not address the reconsideration denial ruling.

6

grant a [Rule] 12(b)(6) motion on statute of limitations grounds only if the time bar is *apparent on the face of the complaint*." *See Semenova*, 845 F.3d at 567 (emphasis added).

### III.

On appeal, the pro se Brunenkant maintains that the district court incorrectly applied Maryland's statute of limitations for medical malpractice claims to the claims alleged in the fraud and conspiracy complaint, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-109, and that the court should have applied a general three-year statute of limitations for civil claims, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  Put simply, we agree with Brunenkant.

### A.

At the outset, we recognize that the Supreme Court of Maryland has never ruled on the precise question of whether fraudulent misrepresentation and conspiracy claims — such as those asserted by Brunenkant in his fraud and conspiracy complaint of May 2023, which stem from alleged medical malpractice — are subject to section 5-101 or 5-109.[4]  To that end, when the parties were queried by our Court about the possibility of certifying a question to the Old Line State's high court, they each balked.  Despite the parties' views, and otherwise being independently satisfied that such a certification is not necessary, our analysis today is our very best "*Erie* guess."  *See Tederick v. LoanCare, LLC*, 168 F.4th

---

[4] Prior to 2022, Maryland's high court was referred to as the "Court of Appeals of Maryland."  In November 2022, however, the voters of Maryland ratified a constitutional amendment that changed the name of the State's high court to the "Supreme Court of Maryland," effective December 1, 2022.  The amendment renamed the State's intermediate court from the "Court of Special Appeals" to the "Appellate Court of Maryland."

154, 165 n.10 (4th Cir. 2026) (citation modified). That is, as a federal court sitting in diversity pursuant to 28 U.S.C. § 1332, "we are divining and enforcing the rule that we believe the [Maryland] high court would choose if the case were pending in that forum." *Id.* To put it somewhat differently, we are "ancipat[ing] what its decision would be." *See Zeigler v. Eastman Chem. Co.*, 54 F.4th 187, 194 (4th Cir. 2022) (citation modified).[5]

On that score, in 1983, Maryland's high court — which as discussed *supra*, was then referred to as the Court of Appeals of Maryland — recognized that the State's Health Care Malpractice Claims Act, which includes section 5-109, "covers *only* those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill." *See Cannon v. McKen*, 459 A.2d 196, 201 (Md. 1983) (emphasis added); *Brooks v. Md. Gen. Hosp., Inc.*, 996 F.2d 708, 712 (4th Cir. 1993) (recognizing that "[a]lthough the scope of the [Act's] language broadly covers all claims against health care providers for injury arising or resulting from the rendering or failure to render health care, Maryland courts have limited the Act's applicability to traditional malpractice claims arising from the breach by a professional of his duty to comply with a standard of care" (citation modified)); *Anderson v. United States*, 46 A.3d 426, 430-33 (Md. 2012) (Maryland high court discussing history of section 5-109). Notably, that Act

---

[5] As our Court has recurrently observed, it is the "State courts, not federal courts, [that] get the last word about what state law means." *See Moshoures v. City of N. Myrtle Beach*, 131 F.4th 158, 162 (4th Cir. 2025) (citation modified). And so here, it is Maryland's high court that will ultimately have the last say on what Marlyand law means.

does not cover "claims for damages arising from a professional's failure to exercise due care in non-professional situations such as premises liability, slander, assault, etc." *See Cannon*, 459 A.2d at 201; *Brooks*, 996 F.2d at 712 ("Claims for injuries arising from other causes in connection with health care have thus been excluded from coverage of the Act").

## B.

Against this backdrop of Maryland legal principles, we are of opinion that the claims alleged by Brunenkant in his fraud and conspiracy complaint fall well within the ambit of section 5-101, and not section 5-109. Although Suburban Hospital maintains on appeal that Brunenkant's fraud and conspiracy claims relate to the emergency gallbladder removal surgery that Brunenkant underwent at Suburban in October 2015 — and thus appear to arise in the health care context — they are simply not the "traditional malpractice claims" subject to section 5-109's five-year statute of limitations. *See Brooks*, 996 F.2d at 712. Instead, as our distinguished Maryland colleague Judge Niemeyer recognized in the 1993 *Brooks* decision, they are civil "[c]laims for injuries arising from other causes *in connection with health care*," such that they are excluded from the Act. *Id.* (emphasis added).[6]

To be sure, rather than invoking section 5-109, the district court should have applied Maryland's general three-year statute of limitations for civil claims to assess whether the claims alleged in Brunenkant's fraud and conspiracy complaint are time barred. *See, e.g.,*

---

[6] For its part, Suburban Hospital assails Brunenkant's framing of his claims, maintaining that they are actually claims for medical malpractice and are subject to section 5-109. But it is Brunenkant — as the plaintiff — who is the "master of [his] complaint and determines which claims to bring" against Suburban. *See Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 844 (4th Cir. 2021) (citation modified).

9

*Phillips v. G.D. Searle & Co.*, 884 F.2d 796, 797-98 (4th Cir. 1989) (recognizing that section 5-101 applies to claim for fraudulent misrepresentation); *Bd. of Educ. of Charles Cnty. v. Plymouth Rubber Co.*, 569 A.2d 1288, 1294 (Md. Ct. Spec. App. 1990) (applying section 5-101 to fraud and civil conspiracy claims). And section 5-101 specifically provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.

Furthermore, in applying section 5-101's three-year statute of limitation, Maryland courts utilize the so-called "discovery rule," which provides that "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *See Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981); *Hartnett v. Schering Corp.*, 2 F.3d 90, 92 (4th Cir. 1993) ("Under Maryland law a plaintiff should have known of a cause of action if (i) she has knowledge of circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation and (ii) an investigation pursued with reasonable diligence would have led to knowledge of the alleged tort." (citation modified)). And in a similar vein, Maryland's high court has recognized that "[w]hether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by the exercise of due diligence, is ordinarily a question of fact for the jury." *See O'Hara v. Kovens*, 503 A.2d 1313, 1320 (Md. 1986) (citation modified).

10

C.

Finally, having concluded that section 5-101 is the statute of limitations applicable to the civil claims asserted by Brunenkant in the fraud and conspiracy complaint, we refrain from undertaking the analysis — for the first time in this appeal — of whether those claims were timely brought against Suburban Hospital. Rather, ever-mindful that "we are a court of review, not first view," *see United States v. Avilla*, 134 F.4th 244, 248 (4th Cir. 2025), we leave to the able district judge the obligation of resolving that issue in the first instance.[7]

IV.

Pursuant to the foregoing, we vacate the district court's Dismissal Order of November 2023 and remand for further proceedings.

*VACATED AND REMANDED*

---

[7] Given our analysis and disposition, we need not reach or resolve Brunenkant's appellate contentions premised on Md. Code Ann., Cts. & Jud. Proc. § 5-203, and judicial estoppel. Those issues, too, are left for the district court in the remand proceedings.

11