**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1416**

CARPET SUPER MART, INC., a North Carolina Corporation; ARTHUR C. JORDAN, JR.; JOYCE J. MOBLEY,

               Plaintiffs - Appellants,

      v.

BENCHMARK INTERNATIONAL COMPANY SALES SPECIALIST, LLC, a Florida Limited Liability Company; DARA SHAREEF, an individual; BRIAN LOCKLEY, an individual,

               Defendants - Appellees.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:18-cv-00398-WO-JEP)

Submitted:  December 6, 2019                   Decided:  January 8, 2020

Before WILKINSON, FLOYD, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Scott K. Tippett, HAGAN BARRETT, PLLC, Greensboro, North Carolina, for Appellants. Scott M. Tyler, MOORE & VAN ALLEN PLLC, Charlotte, North Carolina; Jason H. Baruch, Anthony J. Palermo, HOLLAND & KNIGHT LLP, Tampa, Florida, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Carpet Super Mart, Inc., through its owners Arthur C. Jordan, Jr., and Joyce J. Mobley (collectively, "CSM"), entered into an agreement with Benchmark International Company Sales Specialist, LLC ("Benchmark"), to facilitate the sale of CSM's assets to a third party in exchange for "5% of the Transaction Value." (J.A.[1] 197). But once CSM's assets sold, the parties were unable to agree as to the proper calculation of Benchmark's fee. Specifically, although the contract indicated that the Transaction Value was equivalent to the total benefit that CSM received, CSM maintained that, in oral communications, Benchmark misled CSM into believing that Benchmark's consideration was limited to 5% of the purchase price. As a result, CSM commenced the instant action against Benchmark, seeking a judgment declaring the agreement unenforceable and asserting claims of fraud and unfair and deceptive trade practices. The district court granted Benchmark's motion to dismiss, concluding that Benchmark's alleged misstatements could not alter or amend the clear language of the contract. For the reasons that follow, we affirm.

We review a district court's dismissal under Fed. R. Civ. P. 12(b)(6) de novo, "assuming as true the complaint's factual allegations and construing all reasonable inferences in favor of the plaintiff." *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties in this appeal.

CSM first contends that the Transaction Value provision was too vague to be enforceable. While this claim echoes the amended complaint's allegation that "[t]here was no meeting of the minds regarding the amount, manner, and method of the calculation and computation of the commission" (J.A. 183), CSM failed to present this argument in its opposition to Benchmark's motion to dismiss, instead focusing on its claim that the agreement was ambiguous. For this reason, we decline to consider CSM's vagueness challenge on appeal. *See Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017).

Next, CSM contends that Benchmark fraudulently induced CSM's assent by orally misrepresenting the terms of the contract and failing to provide a copy of Benchmark's standard terms and conditions—which included the Transaction Value provision at issue—that the agreement incorporated by reference.[2] However, under the applicable state law, a party who signs a contract without reading it is bound by its terms unless the other party makes "a false representation of fact materially affecting the value of the contract and which is peculiarly within the knowledge of the person making it and in respect to which the other person in the exercise of proper vigilance has not an equal opportunity of ascertaining the truth." *Davis v. Davis*, 124 S.E.2d 130, 133 (N.C. 1962). Here, far from being peculiarly within Benchmark's knowledge, the existence of the standard terms was readily apparent from the face of the agreement; thus, it was incumbent upon CSM to seek

---

[2] In the district court, CSM disputed whether Benchmark had properly incorporated its standard terms into the parties' agreement. But because CSM makes only a passing reference to this claim in the argument section of its opening brief, we conclude that CSM has abandoned this challenge on appeal. *See* Fed. R. App. P. 28(a)(8)(A); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 n.7 (4th Cir. 2015).

out the standard terms to which it was agreeing. *See id.* ("Where ordinary care and prudence are sufficient for full protection [from fraudulent misrepresentations], it is the duty of the party to make use of them." (internal quotation marks omitted)). By choosing to accept Benchmark's representations without asking to review the standard conditions, CSM was bound by the terms it neglected to discover. Consequently, any cause of action for fraud necessarily failed. Furthermore, insofar as Benchmark's alleged misrepresentations conflicted with the terms of the agreement, CSM's reliance on Benchmark's verbal assurances was unreasonable, thus defeating the claim for unfair and deceptive trade practices. *See Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 227 (N.C. 2013).

Finally, CSM asserts that, even if the agreement was enforceable, it was ambiguous. "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 658 S.E.2d 918, 921 (N.C. 2008) (internal quotation marks omitted). Here, the Transaction Value provision clearly identified the metric for measuring Benchmark's fee—i.e., the total benefit received by CSM—then indicated how Benchmark might determine the total benefit. While complaining that the provision left unresolved how exactly Benchmark would calculate its fee, CSM fails to explain how it was susceptible to multiple reasonable interpretations. Thus, we reject CSM's claim that the parties' agreement was ambiguous.

4

Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*